Whalen and another, Appellants, vs. Finn, Sheriff, Respondent.

*December 8, 1931—March 8, 1932.*

*Darrell MacIntyre* of Madison, for the appellants.

For the respondent there were briefs by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *Roman Heilman.*

The following opinion was filed January 12, 1932:

FAIRCHILD, J. At the time the levy was made the title to the property and the possession of it was in the owner of

the judgment, the Bank of Oregon. All the rights which the mortgagor had were cut off with the exception of the privilege given by statute to redeem, within five days after the sale. Appellants' assignor had not exercised the right given her at the time the levy was made. Her opportunity to exercise this would not exist beyond the five-day period. We are here concerned with sec. 241.13 (2), which reads:

"(2) The mortgagor, his wife, his assignee or assignees, may at any time after sale, within five days, redeem the property sold at the chattel mortgage sale at the actual amount at which the same was sold, plus any expense necessary for the keeping of said property subsequent to the sale, and said property shall not be removed from the town in which said sale took place before the right of redemption expires. Any person aggrieved by a violation of any provision of this section may recover of the person who violated the same, in addition to his actual damages, twenty-five dollars as liquidated damages. If any such property is sold at private sale, without public notice, or is sold within the period herein limited, without such consent the mortgage debt shall be deemed paid and the mortgage securing the same be deemed canceled."

The contention of the respondent that this statute merely extends the period of redemption for five days beyond the sale, and that this right to redeem is an interest owned by the mortgagor and is therefore subject to levy and sale under execution, suggests the question for consideration.

The right of redemption as generally understood, if exercised, carries with it the obligation to pay the full amount of the mortgage indebtedness. The worth of an equity of redemption is arrived at by subtracting the amount of incumbrance from the value of the property. The property in which the mortgagor has the equity of redemption is subject to the usual remedies available to a creditor, but he must deal with the whole interest of the debtor including the obligation and the incumbrance.

This post-sale right of redemption is measured and secured by sec. 241.13 (2), quoted above. It is given to the person or persons named in the statute. He or those specified are the only ones who can exercise it. The statute is so worded that it gives to certain individuals, the mortgagor, his wife, or his assignee, the privilege of redeeming the property after sale, to be exercised after the incumbrance on the property and the equity thereunder has expired. This privilege may be made use of or it may not. It is a personal matter, an incident of property or a method by which one may acquire property, but it is not of such substance or nature that it may be carved out and set aside for the purpose of being reached under execution. When this right becomes available to the debtor the property has been sold, the legal title has left him, has vested in the purchaser, and the mortgagor is left only the right of redemption conferred by statute. From the time of the sale a mortgagor has neither legal nor equitable title to the property sold. He has simply a bare personal privilege to redeem. This is a privilege as distinguished from property and it cannot be levied upon or sold on execution at the instance of a judgment creditor. *Hopkins v. Stephens,* 63 Mont. 318, 206 Pac. 1094; *Brown v. Timmons,* 79 Mont. 246, 256 Pac. 176. See, also, cases and notes in 42 A. L. R. 884, and 57 A. L. R. 1128, where decisions are reviewed tending to support the proposition that the mortgagor's statutory right of redemption after sale cannot be seized as a distinct and severable property right.

This right must be immune from the execution, for the plain purpose of the statute is to enable a mortgagor, his wife, or some friend, to protect the mortgagor against a sale at an unusually low price. The mortgagee, in the absence of contending bids at the foreclosure sale, secures the property at a very low figure. He has foreclosed his

mortgage, acquired title to the property, and is entitled to a judgment of deficiency. In the opinion of the mortgagor the property is worth much more. Were it not for this statute the mortgagor would be remediless, but by it a privilege is given to redeem at the exact and precise figure at which the property was sold, plus necessary expenses for keep. It is evidently the purpose of the statute not to permit any one but the mortgagor, his wife, or some one selected by him, to use the privilege thus created by statute. The privilege is a process of which the mortgagor may take advantage under a statute of fair dealing between persons bearing the relation of mortgagor and mortgagee in the matter of fixing the amount that shall be credited on the indebtedness. The evolution of this law shows a legislative response to demonstrated propriety of surrounding the mortgagor with the advantage. The borrower usually accepts the terms and limitations imposed by the one who favors him with a loan. The legislature intended by this act to put into the relation and into the hands of the debtor some means of insuring him a credit to the extent at least of a fair price for property taken under the mortgage. When this law was created by ch. 294 of the Laws of 1887, it did not contain the opening sentence of sub. (2) now in the above quoted section. This was added in 1911, giving an additional privilege to the mortgagor to retake property which had been sold on foreclosure at so low a figure as to leave a large part of the debt still due. If the property is worth more than has been bid, the mortgagor may arrange for its redemption if he cares to. It results in this: if the mortgagee at a foreclosure sale bids too small an amount he may lose his bargain to such persons as are specified by statute. He then has the amount at which he valued the property and he still has his judgment for deficiency, but he does not have both—the property worth more than he paid for it, and a judgment for deficiency larger than it should

be. If the efforts of the bank in this case can succeed, the plain purpose of the statute is defeated. Permitting a levy on this privilege would be rendering the words used by the legislature in the sentence referred to in sub. (2) of sec. 241.13 idle and useless.

The mortgagee sets a price which under the statute the mortgagor may pay and take his property back. If the mortgagor redeems the property and it is not otherwise exempt, his creditors would have the usual rights. The mortgagor is thus enabled to protect himself against the disadvantages of a foreclosure sale. This privilege is framed and designed to prevent the unfortunate citizen from losing his property without receiving a fair allowance for it. The spirit back of such legislation is wholesome. It is to help the unfortunate or improvident debtor away from a complete loss and to encourage reconstruction of his affairs so as to enable him in some measure to protect those immediately dependent upon him by saving his property or getting full value therefor, and under this scheme the mortgagee does not suffer because he fixes the price on the goods taken under the foreclosure sale. When he is paid the price which he fixed he must be satisfied and for collection of his deficiency avail himself of the means that all creditors have.

At the time the levy was made the title to the property was in the Bank of Oregon and the levy did not affect the right of the mortgagor to redeem. There having been no levy since redemption which would affect the rights of the plaintiffs, a cause of action is stated and the demurrer should have been overruled.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on March 8, 1932.